| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL | | |
| EL PUEBLO DE PUERTO RICO<br><br>Parte Peticionaria<br><br>v.<br><br>JUAN MELÉNDEZ SUÁREZ<br><br>Parte Recurrida | KLCE202400479 | *Certiorari*<br>procedente del<br>Tribunal de Primera<br>Instancia, Sala de<br>Carolina<br><br>Crim. núm.:<br>F VI2023G0008<br><br>Sobre:<br>A95/Asesinato<br>Atenuado |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Juez Grana Martínez y el Juez Rodríguez Flores.

## SENTENCIA

En San Juan, Puerto Rico, a 20 de mayo de 2024.

Comparece el Pueblo de Puerto Rico, representado por la Oficina del Procurador General y nos solicita que revoquemos la determinación tomada en corte abierta el 8 de abril de 2024 y notificada mediante *Minuta-Resolución* el 10 de abril de 2024, por el Tribunal de Primera Instancia, Sala Superior de Carolina. Mediante el referido dictamen, el TPI no permitió al Ministerio Público que presentara un récord de la compañía T-Mobile[1], para corroborar que el 6 de abril de 2022, el número de teléfono (787) 598-4633[2] le pertenecía al señor Juan Meléndez Suárez.

Examinada la solicitud del Procurador General, así como el escrito en oposición a la expedición del recurso presentada por el Sr. Juan Meléndez Suárez, y tras un estudio del expediente de autos, resolvemos expedir el auto de *certiorari* y revocar el dictamen recurrido.

---

[1] Identificación Número 11, de Ministerio Público.
[2] Durante el juicio (5 de abril de 2024) la Agente Karla Millán Pastrana en su directo testificó que durante la etapa investigativa el señor Juan Meléndez Suárez compareció al cuartel de la policía acompañado de su abogado y voluntariamente informó su nombre completo, dirección residencial y el número de teléfono celular (787) 598-4632. Durante la investigación la Agente Millán Pastrana descubrió que el último dígito del número informado por el señor Juan Meléndez Suárez, era incorrecto. El número de celular correcto era (787) 598-4633.

# I.

Por hechos acontecidos el 6 de abril de 2022, en Carolina Puerto Rico, el Ministerio Público presentó cuatro denuncias contra el señor Juan Meléndez Suárez, una por violación al Artículo 95 de Código Penal de 2012, 33 LPRA sec. 5144, sobre asesinato atenuado, al disparar con propósito y mortalmente al señor Clemente Rosario como consecuencia de una súbita pendencia; otra por infracción al Artículo 249 (c) del Código Penal de 2012, 33 LPRA sec. 5339, sobre riesgo a la seguridad pública por disparar un arma de fuego; así como dos violaciones a los Artículos 6.05 y 6.14 de la Ley Núm. 168-2000, Ley de Armas de Puerto Rico, 25 LPRA secs. 466d y 466m, por portación ilegal de un arma de fuego, y disparar o apuntar con un arma de fuego. El 11 de abril de 2022 se encontró causa para arresto contra el señor Meléndez Suárez por las cuatro denuncias. Celebrada la vista preliminar se determinó causa para juicio por tres de las cuatro denuncias[3].

Así las cosas, el 22 de febrero de 2023, el Ministerio Público presentó las correspondientes acusaciones. Como parte de los procedimientos y relacionado a nuestra controversia, el 12 de abril de 2023, el Ministerio Público le entregó a la representación legal del acusado el récord de T-Mobile del teléfono (787) 598-4633 a nombre de Juan Meléndez Suárez y la declaración jurada de Joe Rico, custodio de récord de T-Mobile.

Iniciado el juicio en su fondo, el Ministerio Público intentó que se admitiera en evidencia la Identificación Número 11 sobre el récord de T-Mobile[4], durante el testimonio de la Agente Karla Millán Pastrana. La representación legal del señor Meléndez Suárez objetó su admisibilidad porque constituía prueba de referencia. Por su

---

[3] No se encontró causa por el Artículo 249 (c) del Código Penal de 2012.

[4] Está compuesta de tres documentos: *Subpoena* del 20 de marzo de 2023 enviado a la compañía T-Mobile; la declaración jurada del señor Joe Rico, custodio del récord en T-Mobile; y el récord que indica que el 6 de abril de 2022 la cuenta estaba activa con el número (787) 598-4633 a nombre de Juan Meléndez Suárez.

parte, el Ministerio Público argumentó que el récord de negocio de T-Mobile podía autenticarse mediante declaración jurada conforme a la Regla 902, 32 LPRA Ap. VI R. 902, y admisible conforme a la Regla 805(f) de las de Evidencia, 32 LPRA Ap. VI R.805(f), como una excepción a la prueba de referencia.

Luego de los correspondientes argumentos y memorandos, el TPI, sin pronunciarse sobre la autenticidad, determinó no admitir el récord de T-Mobile al concluir que era una **declaración testimonial** bajo la doctrina de *Crawford v. Washington* 541 US 36 (2004); *Pueblo v. Pérez Santos* 195 DPR 262 (2016) y *Pueblo v. Berrios López,*179 DPR 950 (2010). El foro primario concluyó que el carácter "testimonial" lo creó el Ministerio Público cuando le requirió a T-Mobile vía *Subpoena* el récord del teléfono celular del señor Juan Meléndez Suárez.[5]

Ante dicho dictamen el Ministerio Público solicitó reconsideración y el 24 de abril de 2024, fue declarada no ha lugar.

Inconforme, el 30 de abril de 2024, el Estado, a través de la Oficina del Procurador General, incoó el presente recurso de *certiorari* y apuntó el siguiente señalamiento de error:

> El Tribunal de Primera Instancia erró al no permitir la autenticación y, en consecuencia, prohibir la admisión de los documentos contenidos en la Identificación #11 del Ministerio Público, tras incorrectamente concluir que constituyen declaraciones testimoniales bajo la doctrina de Crawford v. Washington, supra.

Evaluados los planteamientos de las partes, este Tribunal está en posición de resolver.

## II.

## A.

La Constitución del Estado Libre Asociado de Puerto Rico, en su Art. II, Sec. 11, garantiza a todo acusado de un delito el derecho

---

[5] Página 4 de la Minuta-Resolución del 8 de abril de 2024 y citamos al TPI: ..."*Lo que se pretende hacer es testimonial porque fue requerido del propio Fiscal*". Índice del Apéndice, pág. 14.

a carearse con los testigos de cargo. Véase Const. PR, Art. II, Sec. 11. *Pueblo v. Pérez Santos*, supra, a la pág. 269.

El derecho a la confrontación tiene, a su vez, tres vertientes procesales, a saber: el derecho del acusado de confrontar cara a cara los testigos adversos, el derecho a contrainterrogarlos y, por último, el derecho a que se excluya la prueba de referencia que el Ministerio Público intente presentar en su contra. Véase E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Fórum, 1992, Vol. 1, pág. 569. *Pueblo v. Pérez Santos,* supra, págs. 269-270.

En cuanto a esta última vertiente, "el fundamento principal para la exclusión de prueba de referencia es la falta de oportunidad para contrainterrogar". *Íd.* No obstante, la relación entre el derecho a la confrontación y la norma general de exclusión de prueba de referencia "no puede ser una de correspondencia o congruencia total". *Íd.*, pág. 595. Es decir, en algunas instancias, el derecho del acusado a carearse y contrainterrogar a los testigos de cargo habrá de ceder ante la admisibilidad de cierta prueba de referencia, sin que ello implique una violación constitucional. Precisamente en atención a ello, las Reglas de Evidencia de Puerto Rico contienen múltiples excepciones a la prohibición general de prueba de referencia.

Es preciso destacar, sin embargo, que cuando se trata de prueba de referencia presentada contra un acusado, lo primordial es determinar si la declaración es de carácter testimonial. De ser así, la declaración será inadmisible, a no ser que el declarante testifique en el juicio o, en caso de no estar disponible para testificar, que la que se intenta presentar como evidencia haya estado sujeta a un contrainterrogatorio por parte del acusado. De otra parte, si la declaración no es de carácter testimonial, su admisibilidad dependerá de que ésta satisfaga los requisitos establecidos en las

Reglas de Evidencia. Véanse: *Pueblo v. Santos Santos,* 185 DPR 709 (2012); *Crawford v. Washington,* supra; *Pueblo v. Pérez Santos,* supra, a la pág. 270. En *Crawford* evidentemente eran declaraciones testimoniales. Se trataba de las declaraciones que hizo a la policía la esposa del acusado de asesinato. Las mismas estaban relacionadas al asesinato presenciado por ella. La esposa no pudo declarar en el juicio, pues estaba amparada por el privilegio de cónyuges.

Por otra parte, en *Crawford v. Washington,* supra, no sólo se define lo que es un testigo para efectos de la Cláusula de Confrontación, sino que se establece que esta definición aplica tanto para testimonios en corte como fuera del tribunal *(out-of-court statements).* Es importante señalar, no obstante, que Crawford no prohíbe la admisión de aquellas declaraciones hechas fuera del tribunal *(out-of-court statements)* si la intención no es probar la verdad de lo aseverado. Además, tampoco prohíbe la admisión de una declaración anterior de un declarante, si el mismo se encuentra disponible para ser contrainterrogado durante la vista.

Con relación a la definición de lo que constituye una declaración testimonial según *Crawford v. Washington, supra,* el Tribunal Supremo federal señaló expresamente que no daría en el caso una explicación exhaustiva del término. No obstante, sí señaló algunas declaraciones que debían considerarse como testimoniales, tales como: declaraciones en un testimonio ex-parte vertido durante un juicio, *affidávits,* interrogatorios bajo custodia, testimonios anteriores en los cuales el acusado no haya tenido la oportunidad de contrainterrogar, declaraciones vertidas antes del juicio en circunstancias que el declarante razonablemente pudiera esperar que fueran usadas por el Ministerio Público, declaraciones extrajudiciales como *affidávits,* deposiciones, testimonios anteriores y declaraciones hechas en circunstancias que razonablemente

pudieran llevar a un testigo objetivo a creer que tal declaración pudiera estar disponible para utilizarse en un juicio posterior. (Citas omitidas).

En Puerto Rico, el Tribunal Supremo aplicó *Crawford v. Washington*, supra, y su progenie a través de los casos de *Pueblo v Pérez Santos*, supra, y *Pueblo v. Guerrido López*, 179 DPR 950 (2010). En *Guerrido López*, no se admitió como prueba sustantiva contra el acusado un informe químico para detectar sustancias controladas, cuando el técnico que lo preparó no compareció como testigo al momento de su admisión y cuando el acusado no tuvo la oportunidad de contrainterrogarlo. A tales efectos, se determinó:

> En todo caso en el que la intención del Ministerio Público sea ofrecer como evidencia sustantiva-esto es, evidencia para probar un hecho que inculpa al acusado- un récord público o de negocio preparado como parte del curso ordinario del negocio, deberá presentar como testigo-sujeto a interrogatorio- a la persona que preparó dicho récord, si el documento fue preparado con el propósito de presentarlo en un proceso judicial.

Es decir, el análisis de un récord de negocio, para determinar si es testimonial se debe evaluar si el propósito primario o principal de su preparación es para presentarlo en un proceso criminal contra un acusado.

**B.**

La prueba de referencia es una declaración que hace una persona sobre algo que otra persona dijo o escribió, o una conducta no verbalizada de esa segunda persona, como bien podría ser un gesto, si su intención al hacerlo fue que se tomara como una manifestación. 32 LPRA, Ap. VI, R. 801. Ahora bien, "[n]o siempre es prueba de referencia lo manifestado por un tercero al testigo, o lo que el testigo oyó que un tercero dijo. Para que lo manifestado sea prueba de referencia, y por tanto inadmisible, a menos que caiga bajo alguna excepción, la manifestación debe tener algún contenido que pueda ser cierto o falso, y que dicha manifestación, al ser

trasmitida al tribunal por el testigo que la oyó, se produzca para probar que lo manifestado es cierto." *Pueblo v. Rivera Burgos*, 106 DPR 528, 531 (1977).

Como norma general, la prueba de referencia no es admisible en evidencia. 32 LPRA, Ap. VI, R. 801. La exclusión de este tipo de prueba persigue sistematizar dos situaciones importantes que pueden ocurrir al presentar la prueba durante un proceso judicial; la primera, que no se presente prueba de lo que dijo una persona que no está disponible para declarar en un tribunal, por ser poco confiable, toda vez que quien lo manifiesta ante el tribunal es otra persona que no tiene conocimiento personal de los hechos. Segundo y no menos importante, el derecho a la confrontación y el debido proceso de ley del acusado, ya que la prueba que se trae ante el tribunal no es susceptible de ser cuestionada mediante la confrontación y el contrainterrogatorio, porque el que hizo la declaración no está disponible en el juicio.

No obstante, la regla general de exclusión de prueba de referencia no es absoluta, ya que el derecho probatorio permite aquellas excepciones a dicha regla que abonen a la confiabilidad o probabilidad de veracidad de la prueba ofrecida, así como aquellas que surjan por imperativos de necesidad. Lo anterior, debido a que el propósito principal de las Reglas de Evidencia es el descubrimiento de la verdad. 32 LPRA Ap. VI., R. 102.

Una de las excepciones a la regla general de exclusión de prueba de referencia, es la regla número 805 (f), conocida como, Récords del Negocio. Esta dispone:

> Aun cuando la persona declarante esté disponible como testigo, una declaración no estará sujeta a la regla general de exclusión de prueba de referencia en las siguientes circunstancias:
> ....
> (F) Récords de actividades que se realizan con regularidad: Un escrito, informe, récord, memorando o compilación de datos -en cualquier forma- relativo a actos, sucesos, condiciones, opiniones o diagnósticos

que se hayan preparado en o cerca del momento en que éstos surgieron, por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta, si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad, y si la preparación de dicho escrito, informe, récord, memorando o compilación de datos se hizo en el curso regular de dicha actividad de negocio, según lo demuestre el testimonio de su custodio o de alguna otra persona testigo cualificada, o según se demuestre mediante una certificación que cumpla con las disposiciones de la Regla 902(k) o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad. El término negocio, según se utiliza en este inciso, incluye, además de negocio propiamente, una actividad gubernamental y todo tipo de institución, asociación, profesión, ocupación y vocación, con o sin fines de lucro." 32 LPRA Ap. VI, Rg. 805 (f).

Según se desprende del texto de la Regla, los criterios medulares que se evalúan son: (i) que se haya preparado la prueba en o cerca del momento en que ocurrieron los sucesos o las actividades mencionadas por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta, (ii) que se haya llevado a cabo en el curso de la actividad realizada con regularidad, y; (iii), que se haya preparado como una práctica regular de dicha actividad. Ernesto L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, primera edición, San Juan, Puerto Rico, págs. 43-44, 302-303. De tal manera, se busca en la confiabilidad de la prueba, la periodicidad con que se hace ese informe, memorando o compilación de datos, que al ser hecho continuamente en el curso ordinario y como una actividad puntual le confiere credibilidad al mismo e inclina la evaluación hacia la admisión de la prueba.

Por su parte, el Tribunal Supremo de Puerto Rico, citando a Chiesa, afirma que:

...La regla no exige más [sic] que un testigo, aunque lo ideal sería que declarara toda persona que contribuyera a establecer los requisitos que exige la regla para la admisión del récord. Pero tampoco se trata de traer a todo participante, pues entonces no habría, tal vez, prueba de referencia que atender. El testimonio del

custodio del récord es suficiente pero no necesario. Lo importante es que testifique alguien que conozca cómo se preparan los récords en el negocio correspondiente, aunque él no haya preparado ni supervisado el récord en controversia. No es necesario que testifique la persona que originó la información. Pero a pesar de la liberalidad con que se interpreta este requisito, su incumplimiento acarrea la exclusión de la evidencia.... *Muñiz Noriega v. Muñoz Bonet,* 177 DPR 967, 986 (2010).

## c.

La Regla 901 de Evidencia, 32 LPRA Ap. VI R. 901 es la que establece el requisito general de la autenticación de la prueba. El estándar para autenticar una evidencia no testimonial es aquella suficiente para sostener que la materia en cuestión es la que el proponente sostiene. Como parte de los nuevos retos probatorios, la autenticación se ha extendido a las tecnologías y sus correspondientes sistemas o medios electrónicos. El elemento más importante para la autenticación de la evidencia electrónica es que la persona que hace la determinación de autenticación tiene que conocer o recibir asistencia en cuanto a la tecnología que produce, procesa o almacena el tipo de prueba particular que se intenta presentar en evidencia.

Como regla general y luego de sentarse las bases, la autenticación se produce bajo los principios de la Regla 109 (b), 32 LPRA Ap. VI R. 109(b) y 901 de Evidencia, *supra,* salvo coincidan alguna de las autenticaciones *prima facie* que dispone la Regla 902, 32 LPRA Ap. VI R. 902.

La Regla 902[6], *supra,* establece que no se requerirá evidencia extrínseca de autenticación como condición previa a la

---

[6] Regla 902. Autenticación *prima facie*
    No se requerirá evidencia extrínseca de autenticación como condición previa a la admisibilidad de:
    (A)...
    ....
    (K) *Récords certificados de actividades que se realizan con regularidad*
    El original o un duplicado de un récord de actividades que se realizan con

admisibilidad, en ciertos documentos y récords electrónicos. El objetivo de esta Regla 902, es crear una "presunción de autenticidad", ante documentos que se consideran razonablemente auténticos de su faz, ya que por su naturaleza son difíciles de alterar o falsificar. Una vez reconocida la autenticidad *prima facie*, le corresponde al que se opone presentar evidencia que refute tal presunción. Resulta importante señalar que un documento autentico *prima facie*, no significa que puede admitirse sin examinar otras instancias probatorias tales como los privilegios, la prueba de referencia y la pertinencia. El inciso (k) de esta Regla 902 es la única excepción, ya que, si se cumple con su trámite, se admite el récord de negocio bajo la Regla 805 (f). Resaltamos que bajo la nueva Regla 805(f) ya no es indispensable el testimonio del custodio del récord u otro testigo, si se utiliza una certificación que cumpla con las disposiciones de la Regla 902 (k). Sin duda el objetivo de la certificación es facilitar y acelerar el proceso de autenticación y admisibilidad. Rolando Emmanuelli Jiménez, *Prontuario de Derecho*

---

regularidad dentro de la jurisdicción del Estado Libre Asociado de Puerto Rico y los Estados Unidos de América, el cual sería admisible conforme a la Regla 805(F), si se acompaña de una declaración jurada de la persona a cargo de su custodia o de alguna otra persona cualificada, que certifique que dicho récord:

(1) se preparó en o cerca del momento en que ocurrieron los sucesos o las
actividades mencionadas por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta;
(2) se llevó a cabo en el curso de la actividad realizada con regularidad, y
(3) se preparó como una práctica regular de dicha actividad.
La parte que se proponga someter un récord como evidencia, conforme a lo
dispuesto en este inciso, tendrá que notificar por escrito su intención a todas las partes contrarias. Además, tendrá que tener el récord y la declaración jurada disponibles para inspección con suficiente antelación a su presentación como evidencia a fin de brindar a la parte contraria una oportunidad justa para refutarlos.
(L) *Récord electrónico*
Se presumirá la integridad del récord si:
(1) se establece mediante declaración jurada que fue grabado o almacenado por
una parte adversa a la que lo propone, o
(2) se establece mediante declaración jurada que fue grabado o almacenado en
el curso usual y ordinario de negocios por una persona que no es parte en los
procedimientos y quien no lo ha grabado o almacenado bajo el control de la que lo propone.

*Probatorio Puertorriqueño,* Ed. Situm, Cuarta Edición, 2015, pág. 581 *et seq.*

### III.

La controversia ante nuestra consideración se reduce a determinar si en cuanto a la identificación número 11 del Ministerio Público, compuesta del *Subpoena* del 20 de marzo de 2023 dirigido a T-Mobile; la certificación del señor Joe Rico, Custodio de Récord de T-Mobile y el Récord de T-Mobile del teléfono 787-598-4633 a nombre de Juan Meléndez Suárez,[7] se denegó su admisión correctamente bajo el argumento de ser prueba testimonial al amparo de *Crawford* y su progenie. Lo anterior, considerando que fue el Ministerio Público quien solicitó mediante *Subpoena* dichos documentos a T-Mobile.

Tras un análisis detenido del recurso presentado, así como de la oposición, el apéndice y el contenido de las vistas celebradas los días 5 y 8 de abril de 2024, entendemos que el foro primario incidió al no admitirlos. Veamos.

El primer documento es la *Subpoena.* Sobre este documento y durante el testimonio de la Agente Millán Pastrana en el juicio, no se presentó objeción respecto a su autenticidad y admisibilidad. Este *Subpoena* fue preparado por el Ministerio Público bajo la firma y autoridad legal de un Fiscal Auxiliar. Dicho documento fue requerido y tramitado por la Agente Karla Millán Pastrana y utilizado en etapas investigativas. De su faz y por su naturaleza no constituye prueba testimonial a la luz de *Crawford* y su progenie. Según el testimonio de la Agente, ella fue quien lo solicitó y lo tramitó. No albergamos duda que es admisible como una de las excepciones a la regla de prueba de referencia. Regla 805 de Evidencia, 32 LPRA Ap. VI. R.805

---

[7] Índice del Apéndice, págs. 26-29

El segundo documento es la certificación suscrita por el señor Joe Rico, como custodio del récord de negocio de T-Mobile. Este documento fue preparado en el idioma inglés, bajo las solemnidades de las leyes de los Estados Unidos de América, bajo pena de perjurio al amparo de 28 USC Section 1746[8]. Dicho documento tiene el mismo efecto y fuerza que una declaración jurada.

La certificación también establece claramente: que el contenido de la declaración es correcta y verdadera; que los récords adjuntos son archivos electrónicos producidos por T-Mobile como parte de las operaciones regulares del negocio; que la certificación está destinada a satisfacer la Reglas Federales de Evidencia[9] o de

---

[8] §1746. Unsworn declarations under penalty of perjury

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or **proved by the sworn declaration**, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, **with like force and effect**, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

(1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)". (Énfasis nuestro).

[9] Rule 902. Evidence That Is Self-Authenticating

The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:

(1) …
…
(11) Certified Domestic Records of a Regularly Conducted Activity. The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record — and must make the record and certification available for inspection — so that the party has a fair opportunity to challenge them.

(12) …

(13) Certified Records Generated by an Electronic Process or System. A record generated by an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the certification requirements

cualquier estado que sean equivalentes; y el suscribiente reconoce que si divulga algo falso está sujeto a castigo.

Esta certificación, demuestra suficiente confiabilidad y certeza en su contenido. Igualmente, las solemnidades legales allí utilizadas. El documento declara una actividad comercial rutinaria, proveniente de un archivo electrónico de T-Mobile, preparado por alguien que no es parte en el pleito, ni tiene interés en el resultado de este. Por tanto, entendemos que esta certificación cumple con la Regla 902 (k) y (l) sobre Autenticación *prima facie.*

El tercer documento son dos hojas que solamente contienen el nombre de Juan Meléndez Suárez, número de cuenta, fecha de efectividad de la cuenta y el estado de activo. Conforme a la *Subpoena* y la certificación del señor Rico, la cuenta a nombre de Juan Meléndez Suárez estaba activa el 6 de abril de 2022. No tenemos duda que estas dos hojas son un récord de negocio, que T-Mobile realiza regularmente. La información provista nos parece que es la información mínima que tiene una compañía de telefonía sobre su cliente. Resulta evidente concluir que el **contenido** de ese récord electrónico – nombre, número de cuenta, número de teléfono y estado -activo- no fue realizado como resultado del *Subpoena*. Por el contrario, según surge del récord electrónico de T-Mobile la cuenta del señor Juan Meléndez Suárez fue efectiva o abierta desde el **11 de julio de 2005**. Resulta evidente concluir que para ese año 2005 fue que T-Mobile creó ese récord electrónico como parte de sus operaciones regulares. Ese dato de la apertura de la cuenta ofrece suficiente confiabilidad y certeza del contenido propuesto. En

---

of Rule 902(11) or (12). The proponent must also meet the notice requirements of Rule 902(11).

(14) Certified Data Copied from an Electronic Device, Storage Medium, or File. Data copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the certification requirements of Rule (902(11) or (12). The proponent also must meet the notice requirements of Rule 902 (11).

específico que la cuenta estaba activa el 6 de abril de 2022 con el número 787-598-4633 a nombre de Juan Meléndez Suárez.

En resumen, el récord de T-Mobile constituye un récord de negocio admisible bajo la Regla 805 (f) de Evidencia y auténtico bajo la Regla 902(K) y (l) de Evidencia.  Este récord de negocio no constituye una declaración testimonial a la luz de *Crawford* y su progenie, por el solo hecho de haber sido solicitado por el Ministerio Público.  Recordemos que el Ministerio Público vía *Subpoena* solo solicitó la **reproducción** de un contenido almacenado como archivos electrónicos de T- Mobile.  En nuestro caso no se puede decir que T-Mobile a solicitud del Ministerio Público "**creó un contenido**" con el propósito primario de crear un sustituto extrajudicial de un testimonio que se ofrecería durante un juicio. Entendemos que los hechos de nuestro caso son totalmente distinguibles del caso de *Guerrido López* y *Pérez Santos.*

En *Guerrido López,* el Ministerio Público le solicitó al Instituto de Ciencias Forenses que realizara un informe químico donde su **contenido** reflejara las sustancias controladas (cocaína y marihuana) que le fueron ocupadas al señor Guerrido López.  En ese caso el contenido de dicho informe era la prueba directa o sustantiva de las dos acusaciones por violación a la Ley de Sustancias Controladas. En *Pérez Santos[10],* la controversia fue la admisión de las declaraciones extrajudiciales que realizó un menor a la policía, sobre un patrón de maltrato. En dicho caso el Tribunal Supremo determinó que las declaraciones del menor no eran testimoniales y las admitió como excepción a la prueba de referencia -Regla 805 (b), supra-.

Por otra parte, T-Mobile no es la proponente del récord y tampoco es parte del procedimiento criminal.  T-Mobile certificó que

---

[10] Este caso no se relaciona a la admisión de informes o récords de negocios.

el récord es un archivo electrónico generado en el curso usual y ordinario de su negocio. Resulta importante resaltar que la intención de utilizar ese récord de T-Mobile por parte del Ministerio Público fue informado[11] a la representación legal del acusado desde el **12 de abril de 2023**, es decir, casi un año antes de comenzar el juicio. Del expediente apelativo no surge ninguna objeción o reparo por parte del acusado, que se relacione a ese récord de T-Mobile informado por el Ministerio Público en abril de 2023.

## IV.

Por los fundamentos antes expuestos, expedimos el auto solicitado a los fines de revocar la determinación del Tribunal de Primera Instancia. Por tanto, se admite la identificación número 11 del Ministerio Público[12] como exhibit; así como el testimonio relacionado de la Agente Karla Millán Pastrana.

**Notifíquese inmediatamente.**

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[11] Como parte del descubrimiento de prueba al amparo de la Regla 95 de Procedimiento Criminal.

[12] La *Subpoena* del 20 de marzo de 2023 enviado a la compañía T-Mobile; la certificación del señor Joe Rico, custodio del récord en T-Mobile; y el récord de T-Mobile que entre otras cosas indica, el número (787)598-4633 y el nombre de Juan Meléndez Suárez.